**Tyreese ROWAN, Petitioner-Appellant,**

**v.**

**Norman G. OWENS, Superintendent, Indiana State Reformatory, Pendleton, Indiana, Respondent-Appellee.**

No. 84–1494.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 11, 1984.

Decided Dec. 28, 1984.

Rehearing and Rehearing En Banc Denied Feb. 19, 1985.

F. Thomas Schornhorst, Ind. Univ. School of Law, Bloomington, Ind., for petitioner-appellant.

David A. Arthur, Deputy Atty. Gen., Indianapolis, Ind., for respondent-appellee.

Before POSNER, Circuit Judge, SWYGERT, Senior Circuit Judge, and DUPREE, Senior District Judge.[*]

POSNER, Circuit Judge.

In 1979 Tyreese Rowan was convicted by a jury in Indiana of voluntary manslaughter, criminal deviate conduct, and burglary, and sentenced to prison terms (to run consecutively) of 20, 50, and 20 years. The Supreme Court of Indiana upheld his conviction, *Rowan v. State*, 431 N.E.2d 805 (Ind.1982), and Rowan then filed a petition for habeas corpus in federal district court. After reviewing the transcript of Rowan's state trial, the district judge denied the petition, and Rowan has appealed.

His principal argument is that no rational jury could have found him guilty beyond a reasonable doubt; and if this argument is right, *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), requires us to reverse. The evidence against Rowan was circumstantial. A 72-year-old woman who lived alone, Evelyn Ayer, was found dead in her home, lying on her back on the living-room floor, with a bloodstain under her head and an overturned footstool, also bloodstained, nearby. She was naked from the waist down, and all the

[*] Hon. Franklin T. Dupree of the Eastern District of North Carolina, sitting by designation.

clothes that she had been wearing from the waist down were piled on the upper part of her body. Blood was found in her vagina: there was evidence (inconclusive, as we shall see) of semen in the vagina; and there was a tear, with some blood, on the outside of the labia majora (which are the folds that cover the female sexual orifice). She had been killed by heavy blows to the head, possibly with the footstool, sometime in the late afternoon or early evening.

The back door of her house had been forced open; and in the frame of the door was found a hair from a black person. Tyreese Rowan is black; and there was evidence that no black people had worked for or visited Miss Ayer at any time near her death, and that no black people lived within several blocks of her home. On the bedroom floor were found two open purses and some bandaids, and a fingerprint lifted from the can of bandaids (found on the dresser top in the bedroom) proved to be Rowan's. A man's red pocket comb was found in the living room; Rowan had had such a comb. Finally, Miss Ayer's car keys were found across the street from the home of Rowan's mother, and Rowan had been staying with his mother on the day of Miss Ayer's death.

■ There is no doubt that Miss Ayer was killed, and her apartment burglarized. (It is true, as we shall see, that there was a prior acquaintance between Rowan and Miss Ayer, but it had been ten years since Rowan had been in her house; and, as we have noted, the back door had been forced open.) And there is little doubt that she was the victim of a sexual assault. There is also no serious doubt that whoever did these things did them with sufficient purposefulness to satisfy the state-of-mind requirements of these offenses. The burglary and the sexual assault cannot have been accidental or merely negligent. And as to whether the assailant killed Miss Ayer intentionally (as he would have to do to be guilty of voluntary manslaughter, see Ind. Code § 35–42–1–3), the jury could reasonably infer that one who struck heavy blows to the head of an elderly woman intended

to kill her, see *Rowan v. State, supra,* 431 N.E.2d at 812; *Anthony v. State,* 274 Ind. 206, 409 N.E.2d 632, 636 (1980); *Robinson v. State,* 262 Ind. 463, 465, 317 N.E.2d 850, 852 (1974), in the sense that he must have known, and not cared, that death was an extremely likely consequence of the assault. No more is required for intent to kill. See, e.g., *Peats v. State,* 213 Ind. 560, 570, 12 N.E.2d 270, 275–76 (1938); LaFave & Scott, Handbook on Criminal Law 196 (1972).

■ True, there is less than complete certainty that Rowan was the assailant. He points out that each piece of evidence—the fingerprint, the comb, the hair, the car keys—that placed him in Miss Ayer's home is inconclusive, but he ignores the fact that the probability that all four pieces of evidence falsely point to him as the assailant is very small. Suppose that the probability that the fingerprint was not his (or, as he argues, was put on the can months earlier when he was shopping in the store where it was bought) is .01 (a generous estimate); the probability the comb was not his is .50; the probability that the hair was not his is .30; and the probability that someone else discarded Miss Ayer's car keys near his mother's house is .05. Then, assuming these probabilities are independent of each other, the probability that Rowan was not in Miss Ayer's house at a time near when she died is only .000075 (.01 × .50 × .30 × .05), which is less than one-hundredth of one percent. (This is the "product rule," lucidly discussed in McCormick's Handbook of the Law of Evidence 492–99 (2d ed., Cleary, 1972).) True, it would not follow that he had killed her; someone else might have entered the house before or after him, and done the deed. But that is exceedingly unlikely (especially in light of a statement he made to the police—of which more anon), and does not cast substantial doubt on his guilt. And true, the numbers in our example are arbitrary; but they bring out the point that it is wrong to view items of evidence in isolation when they point in the same direction. The jury was not irrational in concluding

that Rowan murdered and sexually assaulted Miss Ayer and burglarized her house.

■ But could a rational jury have found that he committed the crime of "criminal deviate conduct"? This offense under Indiana law is more specific than the name suggests. It is (so far as relevant here) committed by "a person who knowingly or intentionally causes penetration, by an object or any other means, of the sex organ or anus of another [living, see Ind.Code § 35–41–1–2; *Rowan v. State, supra,* 431 N.E.2d at 813] person," against the will of the victim, or without the victim's knowing what is happening. Ind.Code § 35–42–4–2(b). (This subsection was repealed in 1984, by Ind.Pub.L. 183–1984, § 3, but the attack on Miss Ayer took place in 1979.) There is some doubt whether Miss Ayer was alive when Rowan removed her clothes and tore the gash (we do not know with what) in her labia majora. But the pathologist who performed the autopsy on her testified that the blows to the head and the tear in the labia majora were made at about the same time, that probably she had lived between ½ and 1½ hours after the blows to the head, and that probably the tear was not a post-mortem wound. Although there was contrary evidence (the tear had not bled much, as it might have been expected to do—given its location in an area rich with blood vessels—if her heart had still been pumping blood), the pathologist's evidence was sufficient to persuade a reasonable jury beyond a reasonable doubt that Miss Ayer had still been alive, though quite possibly unconscious, when the sexual assault occurred. Maybe it would be better if medical and other expert witnesses were required to attach probability figures to their estimates (a controversial issue on which we need take no stand here); but they are not; and the jury was entitled to accept the pathologist's testimony as having sufficient certainty to establish the sequence between the assault and death.

The serious problem is with another element of the offense of criminal deviate assault: penetration. Although the labia majora is a part of the female sexual organ (the part that closes over the vagina), and whatever object caused the tear "penetrated" the surface of the labia majora, this is not the sense in which the statute uses the word "penetration." The point of section 35–42–4–2(b) is not to punish sexual mutilation as such but to punish (1) sodomy (other than between consenting adults), and (2) rape or sodomy (other than between consenting adults) by objects other than the male sexual organ. See 35 West's Ann. Ind.Code § 35–42–4–2, at p. 456 (1978); *Riffe v. State,* 464 N.E.2d 333, 335–36 (Ind. 1984); *McGill v. State,* 465 N.E.2d 211, 214 (Ind.App.1984). But there must still be penetration (however slight) in a sexual sense; and a cut on the outside of the female sexual organ is not such a penetration. Thus, while injury to the exterior of the female sexual organ is often used as evidence of penetration, see, e.g., *Jackson v. State,* 452 So.2d 438, 440–41 (Miss.1984), there invariably is other evidence as well. See, e.g., *id.* at 439, 441; *Bledsoe v. State,* 274 Ind. 286, 410 N.E.2d 1310, 1317 (1980). (*Allbritten v. State,* 262 Ind. 452, 454, 317 N.E.2d 854, 855 (1974), refers only to the " 'considerable injury to the vulva and outer portion of the vagina,' " but any injury to the vagina would imply some penetration into the female sexual organ. A purely exterior injury to the labia majora need not.)

There is no direct evidence that Rowan effected a penetration of Miss Ayer's sex organ, but there is indirect evidence. The fact that she had been stripped naked from the waist down indicated that rape had been contemplated. The tear in the labia majora had been caused by an object moving in the direction of the vagina. More than a trace of blood was found in the vagina, which suggests, though does not by itself prove (the pathologist acknowledged the possibility of internal bleeding from other causes) that there had been some penetration. The test for acid phosphatase (a substance not found normally in the vagina, but found in semen) was marginally positive—though this is only slight (maybe no) additional evidence of penetration: not only because the test results were weak, but also because acid phosphatase is

found in blood. Although the lack of damage to the tissues of the vagina suggested that penetration had been incomplete, only minimal penetration is necessary to complete the crime; and the lack of damage was some evidence against alternative explanations, unrelated to rape, for the presence of blood in the vagina. Finally, there was no suggestion that Miss Ayer had put up any resistance to being raped (she was in all likelihood unconscious); and that is the usual reason why an attempt at rape—which obviously Rowan made—would fail. Considering all the circumstances, we conclude that a reasonable jury could find beyond a reasonable doubt that Rowan had committed criminal deviate conduct within the meaning of the Indiana statute.

■ Rowan's other issues concern all three criminal charges. Two police officers, testifying about their interrogation of Rowan after his arrest, said they gave him his *Miranda* warnings and asked him several questions, notably whether he had ever been in Miss Ayer's home; to which he replied: not since 1970. The prosecutor's last question to each officer was what if anything Rowan had said after the questions and answers to which the officer had just testified, and the answer was that Rowan had said he didn't want to say anything else. Rowan argues that eliciting this testimony was gratuitous, the prosecutor's object being to show that Rowan had "clammed up" and therefore must be guilty. Compare *United States v. Williams*, 665 F.2d 107, 109 (6th Cir.1981); *United States v. Lewis*, 651 F.2d 1163, 1169 (6th Cir.1981) ("emphatic testimony ... that appellant was warned by the government of his rights and then sought repeatedly to exercise them").

If Rowan had refused to say anything after being given his *Miranda* warnings, testimony about that refusal would have been improper under a long line of cases illustrated by *Doyle v. Ohio*, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976), and *United States v. Shue*, 746 F.2d 1280 (7th Cir.1984), because it would have invited the jury to infer Rowan's guilt from his refusal to incriminate himself. But since Rowan chose to waive his right of silence, the

police were entitled to testify to any incriminating statements he made. By asserting that he had not been in the Ayer home since 1970, Rowan scotched any possible defense theory that the fingerprint, hair, or comb had been deposited on an earlier, and innocent, visit. This was an admission to which the police could testify, as they did, once Rowan had waived his *Miranda* rights. And it was lawful for the police to indicate (provided they did not do so with undue emphasis, and they did not) the end as well as beginning of the interrogation, so that the jury would know that the officers' testimony was complete. No doubt it would have been better if the police had testified just that that had been the end of the interrogation, rather than that Rowan had said he did not want to say anything else. But we cannot conclude from the cold record that the form of words that the police employed so emphasized Rowan's statement (seconds in a trial that lasted more than a week) as to invite the jury to infer that he had decided to "clam up" after realizing he was incriminating himself. Compare *Jacks v. Duckworth*, 651 F.2d 480, 483 (7th Cir.1981); *United States v. Haro-Portillo*, 531 F.2d 962, 963–64 (9th Cir.1976).

■ Rowan next argues that he should not have been tried by a jury composed of people who had been screened for a capital case by being asked whether they would consider imposing the death penalty. His argument is not that the screening was improper under the standard set forth in *Witherspoon v. Illinois*, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968), and cases following it, but that a "death screened" jury is more likely to convict, even in a noncapital case, than an ordinary jury. The pertinent question, however, is not whether a death-screened jury is less partial to defendants, as no doubt it is, but whether it is likely to convict innocent people. If a death-screened jury were thought to be so bloodthirsty as to be likely to convict the innocent, we very much doubt that such juries would be allowed in capital cases, as they are. But if such juries just are more likely than other juries to convict the guilty, and thus to mediate impartially

between the prosecution and the defense, we do not see how Rowan's right to due process of law could have been infringed. See, e.g., *Keeten v. Garrison*, 742 F.2d 129, 134 (4th Cir.1984); *Smith v. Balkcom*, 660 F.2d 573, 578–79 (5th Cir.1981), modified on other grounds, 671 F.2d 858 (1982); see also *Knighton v. Maggio*, 740 F.2d 1344, 1351 (5th Cir.), stay denied, —— U.S. ——, 105 S.Ct. 32, 82 L.Ed.2d 923 (1984). Rowan has a right to a fair jury, not to a jury slanted in favor of guilty defendants. In any event he has failed to show that the prosecutor acted either unreasonably or in bad faith in screening the jury; for there was a fair chance that the prosecution would be able to prove Rowan guilty beyond a reasonable doubt of "intentionally killing the victim while committing or attempting to commit ... burglary ... [or] criminal deviate conduct," Ind.Code § 35–50–2–9(b)(1), which is a capital offense.

■ One of Rowan's witnesses was barred from testifying because the witness had violated the judge's order excluding witnesses before they testified. Witness-separation rules are of course commonplace (see e.g., Fed.R.Evid. 615), and to prevent a witness who has violated the rule from testifying is a natural sanction for violation, especially where as here the witness is closely identified with the party or his counsel (he was the defense investigator—and the defense counsel's son); it is not a per se unreasonable interference with a defendant's right to defend himself. See, e.g., *United States v. Calhoun*, 510 F.2d 861, 867–69 (7th Cir.1975); *United States v. Gibson*, 675 F.2d 825, 835–36 (6th Cir. 1982); but cf. *Fendler v. Goldsmith*, 728 F.2d 1181, 1185–87 (9th Cir.1984). It is true that enforcing such a rule might, by making it impossible for the defendant to put on a meritorious defense, be a disproportionate sanction for its violation, and if so it would be impermissible, as in *Braswell v. Wainwright*, 463 F.2d 1148 (5th Cir.1972). But this is not such a case. The witness would have testified that a police officer had told him that Rowan might have been framed. As there was no other evidence that Rowan had been framed and as the testimony would have been hear-say—hearsay concerning a conjecture, at that—it was not so crucial to Rowan's defense that its exclusion for violation of the separation rule violated Rowan's constitutional right to defend himself. It might not even have been admissible testimony.

The other arguments made by Rowan on this appeal so plainly lack merit that we can rest comfortably on the district court's opinion rejecting them.

AFFIRMED.

SWYGERT, Senior Circuit Judge, concurring in part and dissenting in part.

I respectfully dissent from that part of the court's decision that affirms the conviction of the petitioner for criminal deviate conduct and for which he received a fifty year period of imprisonment. In my view, the evidence presented with respect to this deviate conduct charge was so insufficient that no rational jury could have found the petitioner guilty of that charge beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 324, 99 S.Ct. 2781, 2791, 61 L.Ed.2d 560 (1979).

The majority identifies the two elements of the crime of criminal deviate conduct that the petitioner claims were insufficiently proved: (1) whether the victim was alive at the time of the sexual assault and (2) whether the petitioner penetrated the victim's sexual organ. Although I believe that the sufficiency of the evidence with respect to the former element is a more difficult question than the majority suggests, I confine my dissent to the penetration issue because I believe that the evidence presented with respect to that element is entirely speculative and lacks any probative value whatsoever.

The Indiana Supreme Court, construing earlier Indiana deviate conduct and rape cases, has determined that the slightest "degree of penetration" of the victim's sex organ is adequate proof of criminal deviate conduct. *Rowan v. State*, 431 N.E.2d 805, 813 (Ind.1982). Accordingly, the central question in the instant case is whether there is sufficient evidence in the record of this essential element. *Jackson*, 443 U.S. at 324, 99 S.Ct. at 2791.

Judge Posner acknowledges that the "cut on the outside of the female sexual organ is not" a penetration, *ante* at 1189, and that such evidence standing alone is insufficient to support even an inference a penetration. Speaking for the majority, he states that the other circumstantial evidence—the small amount of blood found in the vagina, the marginally positive acid phosphatase test, and the victim's state of undress—provide the necessary additional evidence to support a finding by any rational juror of guilt beyond a reasonable doubt. Respectfully, I must disagree.

First, the evidence regarding the victim's state of undress is irrelevant to the issue of penetration—it only shows that the petitioner intended to sexually assault Ms. Ayers. Second, the acid phosphatase test lacks any credible probative value. The State pathologist, who performed the test, made several statements at trial with respect to possible inferences regarding the presence of seminal fluid in the vagina that could be drawn from a marginally positive acid phosphatase test. But those inferences would only be permissible in this case if the validity of the test had not been seriously undermined by other factors. Indeed, the pathologist admitted more than once that the test "was insufficient for ... [him] to say that the woman had had a seminal discharge into her vagina." Thus, any possible inferences in this case regarding the presence of seminal fluid in the victim's vagina are pure speculations.

Similarly lacking in probative value is the evidence of the blood. The State did not produce evidence as to blood type or any other evidence from which it could be ascertained whose blood it was. I suppose it can be assumed, in the absence of any evidence suggesting that it was petitioner's

blood, that it was the victim's blood. The State's *only* evidence suggesting the blood's origin was the pathologist's testimony that older women such as the victim may have frequent, but sporatic episodes of uterine bleeding. The pathologist admitted that there were no lacerations, cuts, or bruises either in the victim's vagina or at the opening of the vagina. Thus, no evidence whatsoever was introduced by the State to show that the blood in the victim's vagina was caused by the petitioner's penetration of that organ. It could be that the jury in this case inferred that the blood from the wholly external tear was placed in the vagina by the petitioner's penetration. But this inference was never argued or even suggested by the State. Moreover, in my view, such an inference would be entirely unreasonable in light of the pathologist's testimony regarding the fragility of genital tissues in women of this age.

Thus, I believe that the evidence produced by the State on the question of penetration is so lacking in probative value that it cannot support any reasonable inference of penetration. Even if I were to agree with the majority that this evidence is somewhat relevant—i.e., has a tendency to make the existence of the element of the crime more probable than it would be without the evidence, *cf.* Fed.R.Evid. 401—it is clear after *Jackson* that relevancy is not enough. 443 U.S. at 320, 99 S.Ct. at 2789.[1]

In my view, the majority is applying, *de facto*, the "no evidence" test of *Thompson v. Louisville*, 362 U.S. 199, 80 S.Ct. 624, 4 L.Ed.2d 654 (1960), that was repudiated by the Supreme Court in *Jackson*. The majority seizes upon a few weak pieces of evidence and, in effect, sustains the conviction on the basis that the record is not "wholly devoid of any relevant evidence of a crucial element of the offense charged ...."

---

1. I believe that the acts of the jury in this case have little probative value in determining if *any* rational jury could find proof of penetration beyond a reasonable doubt. The pathologist was permitted to testify over defendant's objection that the tear constituted an "encroachment" on the female sex organ. There was also considerable discussion over what constitutes the female sex organ—the jury ultimately being instructed that the labia majora was part of that

organ. No instruction on the meaning of "penetration" was given. In my view, it is very probable that the jury convicted petitioner for "penetrating" the victim's labia majora.

I am further persuaded that this is indeed what petitioner was convicted of by reading over the pathologist's testimony. Notwithstanding his "encroachment" testimony and his opinions regarding what constitutes the female sex

*Jackson,* 443 U.S. at 314, 99 S.Ct. at 2786. As the Supreme Court has held, a conviction based on such evidence is constitutionally infirm. *Id.*

The majority is surely correct that an attempted rape occurred. And if petitioner had been convicted of that crime I would not hesitate to agree that the conviction should be sustained under *Jackson.* But the issue before us is the conviction for rape, and, in my view, no person should face the possibility of spending fifty years in prison on such flimsy evidence as was produced against the petitioner in this case.

organ, he stated that he did not form an opinion as to whether there was penetration of that organ. Moreover, he suggested elsewhere that what occurred here was "carnal knowledge ... an attempt is made to penetrate the vagina and unsuccessfully ..." and not rape. Although the jury is entitled to credit some parts of a witness'
testimony and discredit other parts, this testimony shows the confused state of the evidence and the instructions before the jury on this issue, and clearly suggests that the jury did not convict the petitioner for penetration as the majority has defined it—a definition with which I wholeheartedly agree.