67 F.3d 301
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Donald NOBLES, a/k/a Jamal A. Sharif, Petitioner-Appellant,
v.
George WELBORN, Respondent-Appellee.
 No. 93-3215.
 United States Court of Appeals, Seventh Circuit.
 Submitted Sept. 12, 1995.*
Decided Sept. 19, 1995.
Rehearing Denied Nov. 7, 1995.
 
 Before FLAUM, RIPPLE and KANNE, Circuit Judges.
 
 ORDER
 
 1
 On December 15, 1978, Donald Nobles killed two people, a fact he does not dispute. His first crime was the shooting death of his girlfriend Rosalyn Nesbitt. Nobles was arrested shortly after the shooting, and taken to the Decatur city jail. Another prisoner, Clyde Davis, was put in a cell with Nobles. Davis was an older, frail man, who Nobles killed by choking and banging him against the cell bars. Nobles pleaded not guilty by reason of insanity to both of the homicides. The circumstances of the victims' deaths made Nobles eligible for the death penalty.
 
 
 2
 Several trial continuances were requested by the defense and were granted by the court. On the day of trial, the defense again asked for a continuance, this time because lead defense counsel Paul Brayman's mother had died. The trial court denied the continuance because defense co-counsel Stanley Hill was in court and available to conduct jury selection. Voir dire began, and the venire was "death qualified"--venire members were asked whether they could follow the law and impose the death penalty if the circumstances warranted. Seven members of the venire were excused because they stated that they would be unable in any circumstances to impose the death penalty. Trial began and Nobles was found guilty of both murders. The jury did not vote unanimously to impose the death penalty, so noncapital sentencing reverted to the judge. Nobles was eligible under Illinois law to be sentenced to a term of 20-40 years for each murder, or, if the court determined the crime was exceptionally brutal, heinous, and exhibited wanton cruelty, that term could be extended to natural life. Nobles was sentenced to 40 years imprisonment for Nesbitt's murder and a concurrent term of natural life for Davis' murder. The Appellate Court of Illinois denied his claims, People v. Nobles, 404 N.E.2d 330 (Ill.App. 4 Dist.1980). Nobles filed a petition to the Supreme Court of Illinois appealing the decision, but the Supreme Court denied review without opinion.
 
 
 3
 Nobles filed a pro se motion for post-conviction relief in 1980. The trial court appointed counsel to represent Nobles in his post-conviction proceedings, but Nobles was not informed that counsel was appointed, and counsel never contacted him. Four years passed without any action taken on Nobles' motion. In 1984, Nobles filed another post-conviction motion that was prepared with the assistance of another attorney, although the motion indicated that it was made pro se. The court considered the motion to be an amendment of the 1980 motion rather than a successive motion. The trial court denied relief, and that decision was upheld by the appellate court. Nobles filed a third post-conviction motion, pro se, in 1989. The 1989 motion was dismissed because Nobles failed to raise the issues in his 1984 petition. The appellate court affirmed the dismissal on that basis, but also opined that Nobles would lose on the merits of his claims.
 
 
 4
 Nobles then filed a petition for a writ of habeas corpus in federal district court pursuant to 28 U.S.C. Sec. 2254. The district court carefully examined Nobles' claims in its review made pursuant to Rule 4 of the Rules Governing Habeas Corpus Proceedings. The district court noted that some of the claims were procedurally defaulted, and allowed Nobles to provide a brief statement of cause for that default. After examining the statement, the district court determined that cause did not exist for the procedural default, and those claims were dismissed. The state was then given the opportunity to respond to Nobles' remaining claims. The district court denied Nobles' petition, which we review de novo. Small v. Endicott, 998 F.2d 411, 413 (7th Cir.1993).
 
 ANALYSIS
 
 5
 Nobles claims he received ineffective assistance of trial counsel for numerous reasons. Nobles never presented this argument to the state courts. Nobles can avoid procedural default if he can show that he had good cause for the default and suffered resulting prejudice. Lemons v. O'Sullivan, 54 F.3d 357 (7th Cir.1995). Nobles claims he could not bring his ineffective assistance of counsel argument because the court was unwilling to provide him with a second, free, transcript of his trial. The record shows that the state court offered Nobles' post-conviction counsel the opportunity to sign out the court's copy of the transcript. Nobles also claims that his appellate counsel was unwilling to criticize a fellow member of the bar as ineffective. These reasons are insufficient to establish cause for Nobles' procedural default. Id.
 
 
 6
 Nobles argues that black members of the venire were excluded from the jury, a claim made pursuant to the United States Supreme Court holding in Batson v. Kentucky, 476 U.S. 79 (1986). Because Nobles never raised this claim in state court nor presented it in his petition to the district court, it is waived.[1] Nobles preserved several arguments for our review by presenting them in post-conviction proceedings or on direct appeal all the way to the Illinois Supreme Court. Those claims that were presented on direct appeal but not in post-conviction proceedings have been exhausted. See Jones v. Washington, 15 F.3d 671, 674 (7th Cir.1994) (Illinois courts effectively closed to filing of successive post-conviction motions); 725 ILCS 5/122-1 (time bar to post-conviction motions).
 
 
 7
 Nobles' leading claim has been mischaracterized as one arising under the Supreme Court holding in Witherspoon v. Illinois, 391 U.S. 510 (1968). Witherspoon and its progeny address only the sentencing phase of a capital case. Nobles' claim addresses the guilt phase of his capital case. He argues that jurors who are selected after undergoing the death penalty screening voir dire are more likely to convict than those who were excused for Witherspoon purposes. In state court, Nobles cited scientific studies demonstrating that phenomenon. He does not do so here. We addressed this question in Rowan v. Owens, 752 F.2d 1186, 1190-91 (7th Cir.1984). In Rowan, we stated that the pertinent question is not whether a death-qualified jury is more likely to convict. Instead, we held that the pertinent question is whether a death-qualified jury is more likely to convict an innocent person. Id. Because we have been presented with no evidence that that proposition is true, Nobles' has not alleged a constitutional violation. Id.
 
 
 8
 Nobles' next argument attacks the statute under which he was sentenced. The jury's decision that Nobles should not be executed transferred sentencing duties to the judge. The judge sentenced Nobles under this statute:
 
 
 9
 A sentence of imprisonment for a felony shall be a determinate sentence set by the court under this Section, according to the following limitations:
 
 
 10
 (1) for murder, a term shall be not less than 20 years and not more than 40 years, or, if the court finds that the murder was accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty ... the court may sentence the defendant to a term of natural life imprisonment....
 
 
 11
 Ill.Rev.Stat. Ch. 38, Sec. 1005-8-1(a)(3) (1979).
 
 
 12
 Nobles argues that the statement "exceptionally brutal or heinous behavior indicative of wanton cruelty" is vague and violates his due process rights. We held in Barnhill v. Flannigan, 42 F.3d 1074, 1079 (7th Cir.1994), that this statute was not unconstitutionally vague. We reached a similar decision in Peebles v. Greer, 739 F.2d 262 (7th Cir.1984), where we looked at the same language in a different statute.
 
 
 13
 Nobles makes one other sentencing attack. He argues that the sentencing judge failed to consider his rehabilitative potential when sentencing him. This argument springs from the Eighth Amendment prohibition against cruel and unusual punishment. See Woodson v. North Carolina, 428 U.S. 280, 304 (1976) (requiring individual consideration of the defendant's personal circumstances). Rehabilitative potential is one of the factors a sentencing court considers when determining if the death penalty should be levied against a defendant. But in this case, the sentencing judge was not weighing whether to impose the death penalty--the jury rejected a capital sentence. Nobles' allegation does not state an Eighth Amendment claim for a noncapital sentence. Harmelin v. Michigan, 501 U.S. 957, 995-96 (1991).
 
 
 14
 Nobles' final, preserved, argument is that he was denied his Sixth Amendment right to counsel when the trial court did not grant a continuance so that attorney Brayman could conduct jury selection. During the time Brayman was out of court, Hill was Nobles' lead counsel when the first eight members of the jury were empaneled. Brayman returned for empanelment of the final four jurors. To show that his right to counsel has been violated, Nobles must establish that Hill's performance was outside the range of professional competency, and that he suffered prejudice as a result. Strickland v. Washington, 466 U.S. 668 (1984). Nobles has not presented any facts that would establish that Hill's representation was so poor that it was tantamount to no representation at all. Id. In fact, Nobles does not even claim that Hill did a bad job--he simply argues that the denial was unreasonable. That may be so, but it is not a constitutional violation and does not warrant habeas corpus relief.
 
 The judgment of the district court is
 
 15
 AFFIRMED.
 
 
 
 *
 After preliminary examination of the briefs, the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court in this case. The notice provided that any party might file a "Statement as to Need of Oral Argument." See Fed.R.App.P. 34(a); Cir.R. 34(f). No such statement having been filed, the appeal is submitted on the briefs and the record
 
 
 [1]
 Nobles also argues that he received ineffective assistance from his post-conviction attorney because that lawyer did not attack the allegedly ineffective assistance of his appellate counsel. A defendant has no constitutional right to post-conviction counsel, so this argument fails. Coleman v. Thompson, 501 U.S. 722, 752-55 (1991)