Falandra **BLEDSOE**, Appellant,

v.

**STATE of Indiana**, Appellee.

No. 1178S252.

Supreme Court of Indiana.

Oct. 9, 1980.

Walter E. Bravard, Jr., Indianapolis, for appellant.

Theodore L. Sendak, Atty. Gen., Elmer Lloyd Whitmer, Deputy Atty. Gen., Indianapolis, for appellee.

PIVARNIK, Justice.

Defendant–appellant Falandra Bledsoe was charged in Marion Criminal Court with drawing a deadly weapon on a police officer (Count I), Ind. Code § 35–21–4–2 (Burns 1975); and two counts of committing a felony while armed, to–wit: rape (Counts II and III), § 35–12–1–1. Appellant was tried to a jury and convicted of one of the armed felony charges (Count II). The jury acquitted him on Counts I and III. This appeal followed. Bledsoe presents four issues for our consideration, concerning: (1) whether the trial court erroneously admitted certain photographs into evidence; (2) whether the trial court denied appellant due process and the presumption of innocence by allegedly compelling him to stand trial in jail clothing; (3) whether the trial court erred in refusing appellant's tendered instructions on the presumption of innocence; and (4) whether the evidence is sufficient to sustain the conviction.

I.

■ Appellant claims the trial court erred when it admitted into evidence three photographs. State's Exhibit Two is a photograph of the front of the victim's mother's home. State's Exhibit Three portrays an empty bed with disheveled bed linens laying on it. This bed was identified as that of one of the alleged victims. Appellant makes no discernible argument on appeal as to why these photographs should not have been admitted. Therefore, he has waived any alleged error pertaining to them. *Lock v. State*, (1980) Ind., 403 N.E.2d 1360, 1369; *Ashbaugh v. State*, (1980) Ind., 400 N.E.2d 767, 773; *Guardiola v. State*, (1978) 268 Ind. 404, 406, 375 N.E.2d 1105, 1107. Appellant contends that State's Exhibit Four is gruesome and was deceptive and irrelevant to any of the issues of this case. This exhibit is a photograph of the other victim's bed, and reveals two or three large dark red stains or marks on the sheet and mattress. Testimony established that the photograph accurately depicted the bed of Y.W., one of the victims, as it appeared after the crime had been committed.

No testimony was adduced, however, concerning the cause of the red spot on the sheet. He contends the jury might have concluded that the spot was actually the victim's blood, when, in fact, subsequent medical testimony established that the victim bled only slightly as a result of the sexual attack. Thus, he asserts, the photograph was deceptive and tended to inflame the jury.

 We find no error in the admission of this photograph. The subject matter of the picture was relevant to the case, for it depicted the scene of the rape of which appellant was convicted. Moreover, we do not believe this photograph is overly gruesome. Even if we were to conclude that it is revolting or gory, these characteristics would not render the picture inadmissible. *Drollinger v. State*, (1980) Ind., 408 N.E.2d 1228; *Wilson v. State*, (1978) 268 Ind. 112, 117, 374 N.E.2d 45, 48. A photograph is admissible, despite its gruesome nature, if it accurately depicts a scene or object which a witness could describe. *Porter v. State*, (1979) Ind., 391 N.E.2d 801, 812; *Wilson v. State, supra*. State's Exhibit Four clearly meets this test. *See Drollinger v. State, supra*.

 As to appellant's claim that the photograph could have deceived the jury, we note that earlier testimony had established that appellant was in close proximity to the bed when he was shot in the shoulder by one of the investigating police officers. Thus, if the jury believed the spot was blood, they reasonably could have concluded that it was appellant Bledsoe's blood, not the victim's. Moreover, appellant did not cross-examine any witness concerning the nature or origin of the spot. While the prosecutor might have been well-advised to establish this fact on direct examination of the victim's mother, through whom the photograph was introduced and admitted, we do not believe his failure to do so created a prejudicially deceptive impression for the jury, especially not one which defense counsel could not have cleared up on cross-examination. There is no error here.

## II.

Appellant next argues he was denied the presumption of innocence throughout the trial. He bases this contention on the fact that he wore identifiable jail clothing during trial. He now claims that he was compelled to wear the jail garb, in contravention of *Estelle v. Williams*, (1976) 425 U.S. 501, 96 S.Ct. 1691, 48 L.Ed.2d 126, and that he was thereby denied due process and the presumption of innocence.

 In *Estelle v. Williams, supra*, the United States Supreme Court held that a state denies the accused due process if it forces him to be tried in identifiable jail or prison clothing. However, "the Court refused to establish a *per se* rule invalidating every conviction in which the defendant was dressed in jail attire." *Carter v. Estelle*, (5th Cir. 1976) 537 F.2d 197, 199. Instead, *Estelle v. Williams* and subsequent cases have clearly established that the central issue is whether the accused was *compelled* to appear before the jury in jail garb. *See, e. g., Carter v. Estelle, supra; Gray v. Estelle*, (5th Cir. 1976) 538 F.2d 1190. Further, the right to be tried in civilian clothing may be waived. The defendant must invoke this right by objecting to his appearance in jail garments. As the Court in *Estelle v. Williams* explained:

"We are not confronted with an alleged relinquishment of a fundamental right of the sort at issue in *Johnson v. Zerbst*, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938). There, the Court understandably found it difficult to conceive of an accused making a knowing decision to forego the fundamental right to the assistance of counsel, absent a showing of conscious surrender of a known right. *The Court has not, however, engaged in this exacting analysis with respect to strategic and tactical decisions, even those with constitutional implications, by a counseled accused.* See, e. g., *On Lee v. United States*, 343 U.S. 747, 749 n.3, 72 S.Ct. 967, 969, 96 L.Ed. 1270, 1273 (1952). *Cf.* Fed. R.Crim.P. 11.

The Second Circuit has noted in a different context:

'Federal courts, including the Supreme Court, have declined to notice [alleged] errors not objected to below even though such errors involve a criminal defendant's constitutional rights.'

*United States v. Indiviglio*, 352 F.2d 276, 280 (1965), *cert. denied*, 383 U.S. 907, 86 S.Ct. 887, 15 L.Ed.2d 663 (1966). The reason for this rule is clear: *if the defendant has an objection, there is an obligation to call the matter to the court's attention so the trial judge will have an opportunity to remedy the situation."* 425 U.S. at 508 n.3, 96 S.Ct. at 1695, 48 L.Ed.2d at 133. Thus, the Court held: "[T]he failure to make an objection to the court as to being tried in such [prison] clothes, for whatever reason, is sufficient to negate the presence of compulsion necessary to establish a constitutional violation." *Id.* at 512–13, 96 S.Ct. at 1697, 48 L.Ed.2d at 135. *See United States v. Spiegel*, (5th Cir. 1979) 604 F.2d 961, 965 n.9; *Camp v. United States*, (8th Cir. 1978) 587 F.2d 397, 400.

■ It is clear, then, that in determining whether the accused was compelled to stand trial wearing jail clothing, we must focus upon what actions the accused and his attorney took to alleviate what they now see as a problem. As the Court explained in *Estelle v. Williams*, whether the accused will stand trial in identifiable prison garb is a decision which rests with the accused and his attorney. *See Carter v. Estelle, supra; Gray v. United States, supra.* In the case before us, the record reveals that counsel did not bring this matter to the trial court's attention until shortly before the jury selection process began. Appellant Bledsoe was confined in the Marion County Jail prior to trial. While counsel asserts his client was indigent, Bledsoe testified at the hearing on this issue that he had clothing at his home in Indianapolis; however, Bledsoe said nothing at any time to jail or court personnel concerning these clothes. Moreover, this cause had reached an even later stage in the proceedings some six weeks earlier, on April 24, and neither Bledsoe nor his attorney raised any question at that time concerning his clothing. The April 24, trial date had been set for approximately five weeks, and no mention was made of the clothing issue during that five–week period. The date on which this case was ultimately tried, June 6, was selected on April 24. Again, neither Bledsoe nor his attorney raised this issue to anyone during this period. The trial court thus did not become aware of appellant's desire to be tried in civilian clothes until moments before the trial began.

■ It is apparent, then, that defendant and his counsel did not consider this matter to be particularly important, and chose not to raise the question until very late in the proceedings. We are mindful of the Supreme Court's words in *Estelle v. Williams* :

"Nothing in this record, therefore, warrants a conclusion that respondent was compelled to stand trial in jail garb or that there was sufficient reason to excuse the failure to raise the issue before trial.[9] Nor can the trial judge be faulted for not asking the respondent or his counsel whether he was deliberately going to trial in jail clothes. To impose this requirement suggests that the trial judge operates under the same burden here as he would in the situation in *Johnson v. Zerbst*, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938), where the issue concerned whether the accused willingly stood trial without the benefit of counsel. *Under our adversary system, once a defendant has the assistance of counsel the vast array of trial decisions, strategic and tactical, which must be made before and during trial rests with the accused and his attorney.* Any other approach would rewrite the duties of trial judges and counsel in our legal system."

425 U.S. at 512, 96 S.Ct. at 1697, 48 L.Ed.2d at 135 (emphasis added.) Particularly important in the context of this case is footnote number nine referred to above. There the Court noted:

"It is not necessary, if indeed it were possible, for us to decide whether this was a defense tactic or simply indifference. In either case, respondent's silence precludes any suggestion of compulsion."

*Id.* We believe the trial court properly found that appellant, by failing—for whatever reason—to bring this matter to the court's attention in timely fashion, waived his right to be tried in civilian clothes. *See generally Candler v. State,* (1977) 266 Ind. 440, 363 N.E.2d 1233. Therefore, under *Estelle v. Williams,* we hold Bledsoe was not compelled to stand trial in prison clothing.

### III.

Appellant Bledsoe next argues the trial court erred in refusing to give his tendered instruction on the presumption of innocence. He contends that the failure to give this instruction, together with certain testimony and a prosecution comment, operated to deny him the presumption of innocence.

Appellant likens this case to that of *Taylor v. Kentucky,* (1978) 436 U.S. 478, 98 S.Ct. 1930, 56 L.Ed.2d 468. In that case, the United States Supreme Court reversed Taylor's conviction on due process grounds, because the trial court refused his tendered instruction on the presumption of innocence. The holding of *Taylor v. Kentucky,* however, must be confined to the facts presented there. Over and above the court's refusal of the tendered instruction, several problems were presented in that case which aggravated that refusal. The prosecutor's closing argument "ranged far and wide," referring to matters which were not properly considered part of the evidence, such as the significance of the indictment against the defendant, and asking the jury to draw inferences about the defendant's conduct based upon those "facts." The prosecutor also repeatedly suggested and hinted that Taylor's status as a defendant tended to establish his guilt. The second major problem concerned the instructions. The Supreme Court found them to be "skeletal, placing little emphasis on the prosecution's duty to prove the case beyond a reasonable doubt and none at all on the jury's duty to judge petitioner only on the basis of the testimony heard at trial." 436 U.S. at 486, 98 S.Ct. at 1937, 56 L.Ed.2d at 478.

The Supreme Court in *Taylor v. Kentucky* did not hold that a denial of a fair trial will be found in every situation in which no instruction on the presumption of innocence is given. The Court took care to explain that such an instruction is not mandatory in every case:

"[O]ne accused of a crime is entitled to have his guilt or innocence determined solely on the basis of the evidence introduced at trial, and not on grounds of official suspicion, indictment, continued custody, or other circumstances not adduced as proof at trial. *See, e. g., Estelle v. Williams, supra.* And it long has been recognized that *an instruction on the presumption [of innocence] is one way of impressing upon the jury the importance of that right.*

. . . . .

While the use of the particular phrase 'presumption of innocence'—or any other form of words—may not be constitutionally mandated, the Due Process Clause of the Fourteenth Amendment must be held to safeguard 'against dilution of the principle that guilt is to be established by probative evidence and beyond a reasonable doubt.' *Estelle v. Williams, supra,* 425 U.S. at 503, 96 S.Ct. at 1693, 58 L.Ed.2d at 130. The *'purging' effect of an instruction on the presumption of innocence ... simply represents one means of protecting the accused's constitutional right to be judged solely on the basis of the proof adduced at trial.*"

436 U.S. at 485–86, 98 S.Ct. at 1935, 56 L.Ed.2d at 475 (emphasis added).

■ In *Kentucky v. Whorton,* (1979) 441 U.S. 786, 99 S.Ct. 2088, 60 L.Ed.2d 640, the Supreme Court further explained its holding in *Taylor v. Kentucky,* and clearly expressed the notion that each case of this type must be evaluated on its own particular facts and circumstances. The Court in *Whorton* addressed the meaning of *Taylor v. Kentucky* in this fashion:

"While this Court in *Taylor* reversed a conviction resulting from a trial in which the judge had refused to give a requested instruction on the presumption of inno-

cence, the Court did not there fashion a new rule of constitutional law requiring that such an instruction must be given in every criminal case. Rather, the Court's opinion focused on the failure to give the instruction as it related to the overall fairness of the trial considered in its entirety.

. . . . .

Under *Taylor*, such a failure must be evaluated in light of the totality of the circumstances–including all the instructions to the jury, the arguments of counsel, whether the weight of the evidence was overwhelming, and other relevant factors–to determine whether the defendant received a constitutionally fair trial." 441 U.S. at 788–89, 99 S.Ct. at 2089–90, 60 L.Ed.2d at 643. Thus, appellant Bledsoe cannot claim a denial of the presumption of innocence or a fair trial solely because the tendered instruction was refused.

■ The allegedly improper testimony to which appellant refers us occurred during the direct examination of one of the investigating police officers. When the prosecutor asked the officer to identify the "suspect" to which he had been referring, the officer replied: "He is the man sitting at the table to my right with the blue jail clothing on." Record at 113. Appellant asked the trial court to remove the jury, and then made a motion for a mistrial or, alternatively, that the testimony be stricken and the jury admonished to disregard it. The trial court denied the motion for a mistrial; however, the court admonished the jury as follows:

"At this point the court will instruct the jury that the reference of the witness to be the fact that the defendant is attired in jail clothing has been stricken from the record, and you are to totally disregard and strike from your minds the fact that the defendant might be clothed in jail clothing and you are instructed not to consider that in any manner in arriving at the innocence or guilt of the defendant in this case . . . ."

Record at 115. Apparently, no one mentioned Bledsoe's clothing after this admonishment.

Appellant also complains of a remark made by the prosecutor during closing argument. The prosecutor told the jury that if they did not believe that Bledsoe had committed the crimes with which he was charged, they should "set him free and let him walk out this door, instead of that one." Record at 232–33. While the record does not specifically reflect which doors the prosecutor was referring to, appellant says the prosecutor was pointing to the door to the hallway and the door to the defendant–holding room, respectively. Appellant argues that this remark was another reference to the fact that he was in custody, and another reference to his jail clothing.

Concerning the court's refusal to read a final instruction on the presumption of innocence, we think it is relevant to examine those instructions which were given. One of the preliminary instructions, in fact, explained the presumption of innocence, another explained the concept of reasonable doubt. In addition, the court referred to these preliminary instructions as he read the final instructions, and told the jury they should keep in mind the preliminary instructions as well. The court also instructed the jury that no outside considerations should affect their deliberations or the determination of any issue, and that their verdict should be based solely on the evidence admitted at trial.

■ Having examined the totality of circumstances present in this case, we do not believe appellant Bledsoe was denied the presumption of innocence or otherwise received a constitutionally unfair trial. The court's admonishment concerning the police officer's statement is presumed to have cured any problem or danger caused by the statement. The final instructions also cautioned the jury to make their judgment based solely on the evidence presented to them. In addition, it is pure speculation to suggest that the prosecutor's remark could have, in any way, drawn the jury's attention to Bledsoe's clothing. Furthermore, we think it is highly relevant that the jury

acquitted appellant of two of the three charges against him. We fail to see how any of the above—recited allegations of error, concerning the police officer's testimony, the prosecutor's remark, and the refusal of the tendered instruction, can be said to have prejudiced appellant as to the one count he was convicted of, when they obviously did not prejudice him with respect to the two counts he was acquitted of. Each of the incidents pertained to appellant generally and this case as a whole. Each of these alleged problems affected appellant, if at all, in a general fashion, and would have had the same effect, if any, on the jury's consideration of all three charges. Judged in light of the totality of the circumstances, we hold appellant was not denied the presumption of innocence or a fair trial by the court's refusal to give his tendered instruction.

### IV.

Finally, appellant challenges the sufficiency of the evidence. He claims the State presented no evidence to prove the element of penetration. The victim, Y.W., was eleven years old when this crime was committed. She testified that appellant "stuck his penis in me." Appellant asserts that Y.W. was undoubtedly inexperienced in such matters, and that there is no testimony that Y.W. actually saw this occur. Thus, he claims, her testimony was merely conclusory, the product of pretrial "coaching" by the prosecutor, and, therefore, not worthy of belief.

Appellant's argument overlooks several well–established principles of law, as well as the facts of this case. The testimony of the victim may, by itself, be sufficient to support a conviction for rape. *Lottie v. State*, (1980) Ind., 406 N.E.2d 632, 636; *Sizemore v. State*, (1979) Ind., 395 N.E.2d 783, 784–85. The victim's testimony was for the jury to believe or disbelieve as they chose and to assign to it whatever weight they deemed appropriate. *Lock v. State*, (1980) Ind., 403 N.E.2d 1360, 1373; *Riggenbach v. State*, (1979) Ind., 397 N.E.2d 953, 956. Further, medical testimony in this

case established the existence of trauma, including a small tear and a small bruise near the hymenal ring, and the presence of sperm in the victim's vagina. Penetration may be inferred from the condition of the victim after the incident. *Holder v. State*, (1979) Ind., 396 N.E.2d 112, 114; *Sizemore v. State, supra*. Appellant was discovered by police lying on top of the victim with his pants down around his knees. The victim testified that he held a knife on her while he performed intercourse on her. Y.W.'s sister, who was lying next to the victim in the same bed when the incident occurred, testified that she heard Bledsoe tell Y.W. that he would cut her throat "if she didn't shut up." We think the evidence is clearly sufficient to sustain the conviction.

The judgment of the trial court is affirmed.

GIVAN, C. J., and HUNTER and PRENTICE, JJ., concur.

DeBRULER, J., dissents with separate opinion.

DeBRULER, Justice, dissenting.

The preliminary instruction mentioned in the majority opinion required the jury to give due regard to the presumption of innocence during the receipt of the evidence and up until the conclusion of the trial. The instruction concluded with the statement that a finding of not guilty is required if at the conclusion of the trial a reasonable doubt of guilt remains. The instruction does not, I believe, express a clear and understandable requirement that the jury take the presumption of innocence into the jury room and there give conscious consideration to it during deliberation. The presumption of innocence continues throughout the trial and terminates only when the verdict is reached. *McKee v. State*, (1926) 198 Ind. 590, 154 N.E.2d 372. The preliminary instruction was correct as far as it went. It clearly did not go far enough. The final instruction requested by appellant covered a part of the subject properly omitted from the preliminary instruction. It required the jury to be conscious of the presumption of

innocence during deliberation while in the process of reconciling all of the evidence.

I have no quarrel with the majority opinion wherein it maintains careful fidelity to the reasoning of the United States Supreme Court in the recent due process cases cited. However, I see no way to avoid competing state law questions which present themselves in the course of considering the "totality of the circumstances." To permit the case to stand in its present form is to invite trial judges to ignore state law which condemns the refusal to give a proper instruction on the presumption of innocence upon request of the accused. *Long v. State*, (1874) 46 Ind. 582. In fact a strong probability exists that the trial judge below was encouraged by our recent case of *Kennedy v. State*, (1977) Ind., 370 N.E.2d 331, to consciously refuse appellant's requested instruction. There, we simply noted the existence of a preliminary instruction on the presumption of innocence in denying a claim that the presumption of innocence had been denied during the trial. Nothing was said in that opinion which establishes the absence of a presumption of innocence instruction from the final instructions. This case, then, also skirts the core requirement of state law and at the same time adds to the weakening effect upon that law already started by the *Kennedy* case.

Indiana law gives to the accused the protection of the presumption of innocence during the reconciliation of all the evidence of the jury, duly sworn and assembled, and the only way that I know of to assure this is by requiring trial courts to correctly state to the jury the law on the subject.