Henry WILLIAMS, Appellant
(Defendant Below),

v.

STATE of Indiana, Appellee
(Plaintiff Below).

No. 4–183A21.

Court of Appeals of Indiana,
Fourth District.

July 21, 1983.

Walter E. Bravard, Jr., Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen. of Indiana, Lee Cloyd, Deputy Atty. Gen., Indianapolis, for appellee.

CONOVER, Judge.

Henry Williams (Williams) appeals a Marion Superior Court jury conviction for robbery.

We affirm.

ISSUES

I. Did the trial court commit reversible error by

A. failing to exclude evidence seized from an allegedly impermissible investigatory stop,

B. failing to disallow Williams's appearance before the jury in jail clothing,

C. failing to exclude testimony regarding Williams's financial status, and

D. failing to instruct the jury on reliability of eyewitness identification, even though Williams's counsel interposed no objections thereto?

II. Did the trial court err by failing to instruct the jury on the lesser included offense of robbery without a deadly weapon even though Williams's counsel neither objected thereto nor tendered an instruction on that subject matter?

III. Was there sufficient evidence to establish the deadly weapon element of the offense?

FACTS

Around 8:00 P.M. on April 27, 1982, two men approached Robert Johnson and Huey Washington in the parking lot of a restaurant; and, at gunpoint, demanded money from them. They took $6.72, some Benson & Hedges cigarettes, and a cigarette lighter from Johnson. When a police car approached this group, the two robbers fled.

Johnson walked to the police car stopped at a traffic light and reported the incident. From that report, the officer knew the robbers were black and the direction in which they ran. Moments later the officer stopped Williams and found a pellet gun, cigarettes, a lighter, and money.

At Williams's trial, defense counsel did not object to the introduction of any of these items as State's exhibits, nor did she make any objections to or tender jury instructions. During the State's case in chief, Williams sat in jail clothes before the jury, again without objection by his counsel.

DISCUSSION AND DECISION

*I. Fundamental Error*

In a proper case, the fundamental error doctrine allows us to consider the merits of an alleged error not properly preserved for appeal. *Rowley v. State,* (1982) 271 Ind. 584, 442 N.E.2d 343, 345; *Pedigo v. State,* (1980) Ind.App., 412 N.E.2d 132, 136. Here, the sole issue *properly* preserved for appeal is the sufficiency issue. Nevertheless, we will address the remainder to determine if any of them are indeed fundamental errors.

To determine whether an alleged error is fundamental, we consider several factors. "[T]he threshhold question must be whether there is error in the record." *Pedigo,* 412 N.E.2d at 137. If error appears, then we determine whether the error ". . . is of such consequence that it denied defendant due process." *Rowley,* 442 N.E.2d at 345. Further, this district has said

Cases in which fundamental error has been found have two principle characteristics. *Pedigo v. State,* (1980) Ind.App., 412 N.E.2d 132. "First, the proceedings below viewed as a whole were void of any

indicia of fairness. Second, the errors were the result of mistake or misconduct by the trial judge in the exercise of his affirmative duties." *Id.* at 136.

*Thomas v. State,* (1982) Ind.App., 442 N.E.2d 700, 701. Finally, we will consider the policy requiring timely and specific objections to the giving or failure to give or tender jury instructions. It weighs heavily against a finding of fundamental error. *Roberts v. State,* (1981) Ind.App., 419 N.E.2d 803, 808, citing *Grimes v. State,* (1976) 170 Ind.App. 525, 535, 353 N.E.2d 500, 508.

■ Because five of Williams's allegations of error relate to the trial court's failure to act sua sponte, we reiterate our supreme court's admonition on the trial court's role:

> A trial judge is not required to take an active part in the trial of the cause to assist or to override counsel in the strategies employed in examining witnesses, objecting or failing to object and in generally managing and directing the lawsuit. It is the duty of a trial judge to preside in a strictly impartial manner and to refrain from undue interference and participation in the proceedings. *Brannum v. State,* (1977) [267] Ind. [51], 366 N.E.2d 1180.

*Henderson v. State,* (1979) 271 Ind. 633, 395 N.E.2d 224, 227.

With this criteria in mind, we review such issues to determine if any involve fundamental error.

### A. Investigatory Stop

Williams argues the trial court's failure, sua sponte, to exclude the State's exhibits introduced at trial violated Williams's fundamental due process, claiming the police officer did not have sufficient facts upon which to stop him. Williams argues the investigatory stop was unlawful, thereby tainting the evidence seized from the stop. The cases Williams cites to support his position adopt the reasoning of *Terry v. Ohio,* (1968) 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889. There, the United States Supreme Court sets out an objective standard for our

review of the lawfulness of police conduct in the following language:

> Would the facts available to the officer at the moment of the seizure or the search "warrant a man of reasonable caution in the belief" that the action taken was appropriate?

*Id.* at 21–22, 88 S.Ct. at 1880. If the stop violated the Fourth Amendment, then the trial court should have excluded any evidence obtained as a result of the violation.

■ Applying the *Terry* standard to this case, we find the officer properly stopped Williams. Although the officer may not have had a detailed description of the robbers, the officer knew the robbers were black and were fleeing in a particular direction. Williams was stopped only moments after the crime was committed, and within a block of the scene. The short time lapse between the crime and the stop supports the officer's actions. Our supreme court found a stop reasonable under the Fourth Amendment where the officer stopped a car ten minutes after and fifteen miles away from the scene of a crime. *Williams v. State,* (1974) 261 Ind. 547, 548–49, 554, 307 N.E.2d 457, 458, 461. As in this case, the officers in *Williams* also stopped suspects on information they were black and traveling in a particular direction. *Id.,* 261 Ind. at 548–49, 307 N.E.2d at 458. Hence, we find no error.

If there was no error, then there can be no fundamental error. *Pedigo, supra.*

### B. Williams's Appearance in Jail Clothing

Citing *Estelle v. Williams,* (1976) 425 U.S. 501, 96 S.Ct. 1691, 48 L.Ed.2d 126, Williams urges us to adopt a rule making it a per se due process violation to allow a criminal defendant to appear before the jury in jail clothing. We decline the invitation. Our supreme court has squarely addressed and rejected this argument. *Bledsoe v. State,* (1980) Ind., 410 N.E.2d 1310, 1313–15. Noting "the central issue is whether the accused was *compelled* to appear before the jury in jail garb," our supreme court indicated we should look at "what actions the

accused and his attorney took to alleviate what they now see as a problem." *Id.,* at 1313, 1314.

In this case, Williams's trial counsel made no objection to Williams's appearing before the jury in jail clothing. Hence, we cannot say Williams was compelled to wear jail clothing in the presence of the jury.[1]

### C. Testimony of Financial Status

### D. Failure to Instruct on Eyewitness Identification

We have consolidated these allegations of fundamental error because our supreme court has recently rejected both arguments. *Alexander v. State,* (1983) Ind., 449 N.E.2d 1068 at 1071–1073. In *Alexander,* the State asked the defendant questions related to his employment history, defense counsel did not object, and our supreme court found the claimed error did not fit the definition of fundamental error. *Id.,* at 1071–1072. Furthermore, the testimony here shows Williams was employed and willing to work during these difficult economic times.

Williams next urges us to adopt a requirement that trial courts give instructions, sua sponte, on eyewitness identification. Again, our supreme court has declined to adopt such a rule, noting that even in jurisdictions which have adopted the rule identification must be a key issue, and a defendant must request such an instruction. *Id.,* at 1072–1073. Therefore, no fundamental error occurred as to these two issues.

### II. Failure to Give Instruction on Lesser Included Offense

Williams next claims the trial court erred by failing to give, sua sponte, an instruction on the lesser included offense of robbery without a deadly weapon. However, the record contains neither a request for an instruction on lesser included offenses, nor objections to the instructions given.

Further, this allegation of error was not included in the motion to correct errors. A defendant waives any alleged error for failure to instruct on the lesser included offense by failing to tender the instruction he desires to the trial court. *Swan v. State,* (1978) 268 Ind. 317, 324, 375 N.E.2d 198, 202; Ind. Code 35–37–2–2; Ind. Rules of Procedure, Appellate Rule 8.3(A)(7). Thus, any error on this count was waived.

### III. Sufficiency of Deadly Weapon Element

This court recently discussed sufficiency of the deadly weapon element, saying:

Where differing conclusions · might be drawn as to whether or not the object is dangerous or deadly, it is a question of fact for the jury to determine from a description of the weapon, the manner of its use, and the circumstances of the case.

*McFarland v. State,* (1979) 179 Ind.App. 143, 384 N.E.2d 1104, 1108. Although the parties do not cite any cases finding a pellet gun to be a deadly weapon, the jury properly determined a pellet gun is a deadly weapon. Defining deadly weapon, our statute reads, in pertinent part

a weapon, device, . . . or other material that in the manner it . . . could ordinarily be used . . . is readily capable of causing serious bodily injury.

IC 35–41–1–2. Testimony at trial described the type of projectile fired from a pellet gun. With such information, the jury could determine whether a pellet gun was capable of inflicting serious bodily injury. IC 35–41–1–2 which defines serious bodily injury says:

Bodily injury that creates a substantial risk of death or that causes serious permanent disfigurement, unconsciousness, extreme pain, or permanent or protracted loss or impairment of the function of a bodily member or organ.

The jury, "based upon their common knowledge and experience," reasonably could determine a pellet gun could cause serious

---

1. The *Bledsoe* court also indicated the right to be tried in civilian clothes may be waived if not timely brought to the court's attention. *Bledsoe,* 410 N.E.2d at 1315.

bodily injury, as when someone is struck in the eye with a pellet projected from a pellet gun. *Rosenbalm v. Winski,* (1975) 165 Ind. App. 378, 386, 332 N.E.2d 249, 254. There is substantial evidence of probative value from which the jury could reasonably infer Williams was armed with a deadly weapon. *Brown v. State,* (1977) 266 Ind. 82, 85–86, 360 N.E.2d 830, 833.

Affirmed.

MILLER, J., and YOUNG, P.J., concur.