Ken **CLARKSON**, Appellant,

v.

**STATE** of Indiana, Appellee.

No. 884 S 322.

Supreme Court of Indiana.

Dec. 17, 1985.

Susan K. Carpenter, Public Defender, M.E. Tuke, Deputy Public Defender, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., John D. Shuman, Deputy Atty. Gen., Indianapolis, for appellee.

PIVARNIK, Justice.

Defendant-Appellant Ken Clarkson was convicted by a jury in Henry County Circuit Court on March 7, 1984 of six counts of Unlawful Sale of Unregistered Security, six counts of Fraud in the Sale of a Security, six counts of Unlawfully Transacting Business as an Agent, and seven counts of Theft. He was also found to be an habitual offender. Judge John L. Kellam sentenced Appellant as follows: five years for each count of Unlawful Sale of an Unregistered Security, five years for each count of Fraud in the Sale of a Security, five years for each count of Unlawfully Transacting Business as an Agent, and two years for each count of Theft, said sentences to run concurrently. Appellant's sentence was enhanced an additional thirty (30) years for having been found an habitual offender.

Appellant now directly appeals, raising the following errors:

1. denial of a motion for continuance;

2. denial of two motions for mistrial;

3. admitting Phillip McCool's testimony;

4. admitting testimony regarding a common scheme;

5. sufficiency of the evidence; and

6. failing to instruct the jury on intent.

Ken and Dortha Hutchens, a couple in their 70's, were first approached by a Mr. Ikerd, an insurance salesman and Appellant Ken Clarkson, a former insurance salesman for the overt purpose of selling insurance. However, Dortha Hutchens, who managed the couple's finances, testified that Appellant returned to the Hutchens home several times thereafter, soliciting investment funds for his company. Appellant told the Hutchenses that they were currently paying too much in taxes on their investments and that their investment with him would be as good as with any loan company, would yield tax-free interest and would be insured. Although Appellant was vague as to the nature of the investment, the Hutchenses testified that they thought they were investing in a loan company. The initial rate of return, Appellant told the Hutchens was to be 12%. Later the amount of interest would be 15%. On February 13, 1980, Dortha and Ken Hutchens issued two checks made payable to the Ken Clarkson Agency, each in the amount of five-thousand dollars ($5,000.00). In return the Hutchenses received two promissory notes. On June 2, 1980, the Hutchenses issued two more checks to the Ken Clarkson Agency for five-thousand dollars ($5,000.00) each, and again received in return two promissory notes. On August 14, 1980, two more checks were issued to the Ken Clarkson Agency, for ten-thousand dollars ($10,000.00) each, and for which the Hutchenses received receipts. On November 20, 1980, Dortha Hutchens issued a check to Ken Clarkson, accidentally omitting the word "Agency", for ten-thousand dollars ($10,000.00). She received neither a note nor a receipt for this check. Initially the Hutchenses were hesitant to reinvest their interest payments, but were persuaded by Clarkson. In December of 1980, the Hutchenses received a promissory note for one-thousand, eight-hundred dollars ($1,800.00) for interest earned but reinvested. After two years, Dortha received a letter which stated Clarkson had encountered financial difficulties and was contem-

plating bankruptcy. Thereupon, the Hutchenses retained counsel, and began these proceedings.

## I

Appellant first argues that the trial court abused its discretion by denying counsel's motion to withdraw his appearance and by denying a continuance based upon that motion. On February 18, 1983, counsel for Clarkson formally moved to withdraw his appearance on behalf of Clarkson, citing as his reasons that it was likely the charges against Clarkson could not be resolved without trial and that it was likely that he would be called by the State as a witness at trial. On March 8, 1983, the court denied the initial motion of counsel to withdraw. On the first day of trial, counsel for Clarkson renewed his motion. Further, counsel moved to continue the date of trial citing three bases: first, counsel's intent to withdraw; second, the illness of Clarkson; and third, the unavailability of certain evidence. The court overruled both motions.

■■■ Ind.Code § 35–36–7–1 (Burns 1982) allows a continuance to be granted upon proper showing that there is an absence of evidence or illness of the defendant or a witness which precludes the conducting of the trial, provided a motion is made five days prior to commencement of trial and is supported by appropriate affidavits. Continuances not conforming to the statutory edicts may be granted within the sole discretion of the trial court. *Carter v. State* (1983), Ind., 451 N.E.2d 639. The denial of a Motion for Continuance is reversible only when the denial constituted an abuse of discretion and the record demonstrates that the accused was prejudiced. *Harris v. State* (1981), Ind., 427 N.E.2d 658. The court's refusal to allow counsel to withdraw the day of trial is not reversible error in that counsel was never called to testify. Consequently, Appellant has not demonstrated any resulting prejudice. *Vacendak v. State* (1982), Ind., 431 N.E.2d 100. Also, counsel's motion for a continuance based on Appellant's illness or unavailability of evidence for trial was made the day of trial. Thus, the court's denial is reviewable only for an abuse of discretion. Counsel merely asserted to the trial court that it would be detrimental to Clarkson's health to proceed with trial. He stated he was unable to get a statement from Clarkson's doctor because she was out of town. Based on this evidence alone it was not an abuse of discretion for the trial court to deny the motion for continuance. Further, the trial court relied heavily upon the fact that counsel for Clarkson had not made a motion to obtain the materials held in Warrick County, which counsel alleged were unavailable. The trial court did not abuse its discretion by denying a continuance when the absence of evidence was due to counsel's inaction. Consequently, Appellant has failed to demonstrate error by raising this issue.

## II

■■ Appellant next argues that the trial court erred by denying his motion for mistrial based upon the alleged evidential harpoon thrust into the trial by the testimony of Thomas Jarvis, Indiana State Police Officer. In the early stages of trial, Jarvis stated he had concluded that Appellant had deceived the Hutchenses. Appellant claims this testimony so prejudiced the jury that the admonition given by the court was necessarily insufficient to cure the harm. In considering allegations of the use of an evidentiary harpoon, we analyze whether the evidence was intentionally interjected despite its known inadmissibility, whether there was a serious conflict in the evidence, the degree to which the defendant was implicated by the evidence under scrutiny, and the trial court's admonishment to the jury. *Davis v. State* (1981), 257 Ind. 509, 418 N.E.2d 203, 205. The other evidence introduced at trial overwhelmingly showed Appellant's guilt in committing the crimes with which he was charged. Further Jarvis had investigated the possibility of fraud having been committed against the Hutchenses. When asked what tasks he had been contacted to perform, he enumerated the tasks and then unexpectedly blurted

out his personal conclusion at the end of his answer. It is clear from the record that this testimony was not intentionally solicited by the State. Also, the question of guilt in this case is clear and compelling. According to the criteria enumerated in *Davis*, not only did this situation not constitute an evidentiary harpoon, but the trial court's admonition to the jury cured any prejudice which may have occurred.

■ Appellant contends another incident of an evidentiary harpoon occurred during the testimony of Michael Kirby, a consumer consultant for the Indiana Department of Insurance. Kirby stated that Clarkson had lost his insurance license in 1958. The trial court, outside the presence of the jury, had advised the State and Kirby not to mention a revocation of license based upon a theft conviction. The court was unaware that Appellant had had his license revoked more than once. Thus, Kirby did mention a different instance of revocation because the Judge had not specifically advised him not to mention it. Appellant urges that the State intentionally used this improper evidence. First, we note that Appellant was not placed in grave peril by this testimony. The real harm would have occurred if Kirby had testified about the prior conviction. The reason the trial court did not admit evidence of Appellant having his license revoked is because the trial court simply deemed such evidence irrelevant. The State had tried to introduce such evidence to show that Appellant had used many of his customer contacts from the insurance business to perpetrate his fraudulent scheme. Appellant had continued to contact customers once his license was revoked and many of those contacted became victims to his ploy. Whatever prejudice resulted from Kirby mentioning the 1958 revocation was minimal because insurance licenses may be revoked for reasons other than those reflecting poorly upon one's character. Further, according to the criteria set out in *Davis*, not only is it questionable whether the State improperly used an evidentiary harpoon, but clearly whatever prejudice may have been caused was cured by the trial court's admonishment to the

jury. Accordingly, no error has been demonstrated by this issue.

### III

■ Appellant contends the trial court erred by admitting testimony from Philip McCool, Chief Deputy Security Commissioner of the Indiana Securities Division, about the registration of securities. Appellant argues the requirements and procedures were irrelevant to any issues in the case. Consequently, the testimony was misleading and confusing to the jury.

Appellant was charged and tried, *inter alia*, with the sale of unregistered securities. Evidence is relevant if, in light of general experience, it logically tends to prove or disprove some issue of fact. *Irons v. State* (1979) 272 Ind. 287, 397 N.E.2d 603, 606. Further, evidence tending to prove a material fact is admissible even though the tendency to prove that fact is exceedingly slight. *Grimes v. State* (1983), Ind., 450 N.E.2d 512, 519; *Armstrong v. State* (1982), Ind., 429 N.E.2d 647. Appellant disputed, and still does, whether the dealings in issue fall within the definition of securities. Philip McCool recited the definition of a security to the jury and explained modifications made in the definition since Appellant had committed the crimes. Since the jury had to make the determination of whether Appellant's actions involved securities, it was relevant for McCool to testify as to the definition. Further, since one of the charges was the sale of unregistered securities it was also relevant for McCool to testify as to the procedures and requirements entailed in registration. Appellant has failed to demonstrate any error by raising this issue.

### IV

Appellant's next assignment of error is that the trial court admitted the testimony of Mona Edson, Ethel Conwell and Martha Anderson as to business transactions between each witness and Clarkson. He claims that none of the transactions were related to the events precipitating the

charges in this case, and the testimony served only to prejudice his case. Mona Edson was the first of the three witnesses to testify as to Appellant having received monies and never having made any interest payments. Appellant objected, claiming her testimony was irrelevant and purely prejudicial. The trial court overruled the objection for two express reasons; namely, he felt these witnesses were testifying as to a common scheme which was admissible to prove Appellant's criminal intent and he thought the testimony was relevant to show a scheme to defraud as alleged in the fraud counts. Although Appellant entered a continuing objection to Mona Edson's testimony, he never objected to the testimony of Conwell or Anderson.

Evidence of other criminal activity may be admissible in certain cases to prove the accused's identity, knowledge, intent or motive, or to demonstrate common plan or scheme of criminal activity precipitating the offense now being tried. *Malone v. State* (1982) Ind., 441 N.E.2d 1339. Also, the trial court has broad discretion in ruling upon the relevance of such evidence. *Malone, supra; Wilson v. State* (1982), Ind., 432 N.E.2d 30. All three witnesses were elderly widows, who were approached by Appellant and told they were paying too much in taxes. They were each told they could receive a higher rate of interest on their savings if their money were invested with him. Each was told their return would be tax-free and each testified that they decided to invest per Appellant's advice. None of them considered the money given to Appellant to be a loan, rather all of them testified they had made an investment. There was a definite pattern to Appellant's actions tantamount to a scheme. His seeking out elderly and financially unsophisticated persons, enticing them with representations that they would earn a higher and tax-free return if their funds were invested with him, and then paying very little, if any, amount of interest to these investors was relevant to show his intent to defraud and a scheme to defraud. Accordingly, the trial court properly admitted this evidence.

## V.

Appellant claims the trial court committed fundamental error by failing to instruct the jury on the element of intent for the charges stemming from the Indiana securities laws. Appellant cites *Smith v. State* (1984), Ind., 459 N.E.2d 355, *reh. denied,* for the proposition that it is fundamental error to fail to give instructions on all elements of the crime necessary for conviction when the court has purported to provide instructions on the elements. The jury found Appellant guilty of Unlawfully Transacting Business as an Agent, Unlawful Sales of an Unregistered Security and Fraud in the Sale of a Security. These violations are able to be prosecuted as felonies pursuant to Ind.Code § 23–2–1–18.1 (Burns 1982) which states, "a person who knowingly violates this chapter commits a Class C felony." However, we first note that in the absence of fundamental error, error is waived as to the failure to give instructions on a particular point of law unless the defendant tenders instructions on that point. *Clemons v. State* (1981), Ind., 424 N.E.2d 113. Appellant in the immediate case concedes he failed to tender any instructions regarding an intent element. Furthermore, issues not preserved in the Motion to Correct Errors are waived. *Lewis v. State* (1981) Ind., 424 N.E.2d 107, 113, *reh. denied.* Appellant also failed to raise this error in his Motion to Correct Errors. However, since a reviewing court may consider issues raised for the first time on appeal if necessary to serve the ends of substantial justice or prevent the denial of fundamental rights, it is imperative Appellant demonstrate fundamental error. *Griffin v. State* (1982) Ind., 439 N.E.2d 160. Appellant cites at great length and heavily relies upon *Sills v. State* (1984), Ind., 463 N.E.2d 228, *reh. denied,* (DeBruler, J., concurring, Givan, C.J., concurring in result with opinion in which Pivarnik, J., concurred, and Prentice, J., dissented.) Obviously, this case lends no authoritative support to Appellant's argument. Furthermore, where an offense

consists of a violation of a statute the only intent necessary is the intent to commit actions proscribed by the statutes. *Hicks v. State* (1979), 272 Ind. 350, 379 N.E.2d 973. The trial court gave the following three instructions:

### "No. 8

To convict the defendant of the offense of Unlawfully Transacting Business as an Agent, a Class C Felony, the State must have proved beyond a reasonable doubt, each of the following elements:
The defendant:
(1) Transacted business in the State of Indiana;
(2) As an agent; and,
(3) If doing so, the defendant was not registered as required by I.C. 23–2–1–8 —I.C. 23–2–1–11.

\*　　\*　　\*　　\*　　\*　　\*

### No. 12

To convict the defendant of the offense of unlawful sale of unregistered securities, a Class C Felony, the State must have proved beyond a reasonable doubt, each of the following elements:
The defendant:
(1) Offered or sold;
(2) A security; and,
(3) Such security was not registered under the law (I.C. 23–2–1–1—I.C. 23–2–1–24), and, such security or transaction was not exempted by the law.

\*　　\*　　\*　　\*　　\*　　\*

### No. 14

To convict the defendant of the offense of Fraud in the Sale of a Security, a Class C felony, the State must have proved beyond a reasonable doubt each of the following elements:
The defendant did:
(1) In connection with the offer, sale or purchase of any security, directly or indirectly:
(a) employed a device, scheme or artifice to defraud; or,
(b) make untrue statement or statements of material fact or omitted to state a material fact necessary in order to make the statements made in light of the circumstances under which they were made, not misleading; or,
(c) engage in any act, practice or course of business which operated or would operate as a fraud or deceipt [sic] upon the alleged victims."

Transacting business, pursuant to Instruction No. 8, offering or selling pursuant to Instruction No. 12, and committing one of the acts constituting fraud as enumerated in Instruction No. 14, are acts by their inherent nature cannot be done unknowingly. Accordingly, if the jury found Appellant committed these acts, they necessarily found he committed them knowingly. It follows that it was not fundamental error for the trial court to have failed to specifically instruct the jury that Appellant had to commit these acts knowingly. Further, whether Appellant was aware of the Indiana securities laws is of no moment for this is a situation where criminal intent is presumed from the acts of the defendant. *United States v Schwartz*, 464 F.2d 499 (2d Cir.1972); *United States v. Peltz*, 433 F.2d 48, 55 (2d Cir.1970). This is particularly true here where there was much evidence before the jury regarding the appellant's acts, his position and relationship with the victims, and the strong inference that he was purposely dealing in the investment market with intent to defraud. *Marbley v. State* (1984), Ind., 461 N.E.2d 1102.

■ Philip McCool, Chief Deputy Securities Commissioner of the Indiana Securities Division, was questioned by Appellant's counsel as to what changes had been made in the definition of a security since Appellant had committed the acts in question. McCool responded:

"In regard to this particular sub-section i, there was one change, and that would be in clause 8, item i, which presently reads 'Any bona-fide security transaction in or loan of outstanding securities,' prior to May 1, 1983, had read 'any bona-fide pledge or loan'."

Later, upon being questioned by defense counsel, the following colloquy occurred

with regard to the old definition of a security applicable to Appellant:

"Q And can you assume, if you would please, that you have a person who has picked up this Act and read it and read that to me, that he could go out and make loans, pledge things, that he would be likely to have misinterpreted what you thought the Act was, or the Commissioner, I'm not making reference to you—

\* \* \* \* \* \*

A My answer is no, I don't think a person could read that and conclude that he could make a loan without it coming within the jurisdiction of this Act."

Further, three witnesses, other than the Hutchenses, testified as to the common misrepresentation made to them and each testified that they understood they were making an investment with Appellant. There was also testimony from the Hutchenses and the other three witnesses, all elderly, that Appellant relentlessly visited them, unannounced and unsolicited. He used pressure sales techniques and promised tax-free rates of return, which were substantially higher than the yield the victims were then receiving on their savings. It is beyond question that there was sufficient evidence from which the jury would conclude Appellant had dealt in securities and violated the securities laws.

Accordingly, the trial court is affirmed in all things.

GIVAN, C.J., and DeBRULER, PRENTICE and SHEPARD, JJ., concur.