Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



ATTORNEY FOR APPELLANT:

**VALERIE K. BOOTS**
Marion County Public Defender
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ANGELA N. SANCHEZ**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

MARK A. CENTOFANTE,                    )
                                       )
    Appellant-Defendant,           )
                                       )
       vs.                      )    No. 49A05-1207-CR-360
                                       )
STATE OF INDIANA,                      )
                                       )
    Appellee-Plaintiff.            )

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Kurt Eisgruber, Judge
Cause No. 49G01-1108-FA-55925

**May 9, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BARTEAU, Senior Judge**

## STATEMENT OF THE CASE

Mark Centofante appeals his conviction for sexual misconduct with a minor. We affirm.

## ISSUES

Centofante raises three issues:

I.   Whether the trial court committed fundamental error by failing to instruct the jury on the definition of the standard of proof applicable to his affirmative defense.

II.   Whether the trial court committed fundamental error by inadequately instructing the jury on the presumption of innocence.

III.   Whether the alleged errors cumulatively amount to fundamental error.

## FACTS AND PROCEDURAL HISTORY

On the evening of August 7, 2011, fifteen-year-old S.Y. and her younger sister R.Y. were with their uncle's ex-wife Kiona Leland when Leland's car broke down. Leland called her live-in boyfriend James Smith, and he and twenty-seven-year-old Centofante arrived and fixed the car. Everyone then got into the car and went to Leland's house, with Centofante riding in the backseat with S.Y. and R.Y.

Once at the house, Smith and Centofante left to get beer. When they returned, they drank and used drugs with Leland in the living room. S.Y. and R.Y. were initially in Leland's bedroom but later joined the others in the living room. S.Y. testified that she could not remember whether she snorted pills that night. Centofante testified that she snorted pills and smoked marijuana with them and further that she made sexual advances toward him by talking about sexual things and showing him her breasts.

2

Later that night, Centofante and S.Y. had sexual intercourse in the bathroom. At trial, they each presented widely differing accounts of the incident.

S.Y. testified that she was in the bathroom when Centofante started pushing the door open. She called out that the bathroom was occupied, but Centofante responded, "I don't give a f*ck." Tr. p. 99. According to her testimony, Centofante asked her to perform oral sex on him. She refused, but he grabbed her breasts, pushed her, continued asking for oral sex, and would not let her out of the bathroom. S.Y. claimed that when Centofante then said he wanted to have sexual intercourse, she did not respond but instead texted her boyfriend to distract herself. She told her boyfriend that someone had just come into the bathroom but did not tell him anything else. S.Y. testified that she eventually gave in to Centofante because she was scared he would hurt her. She claimed Centofante had sexual intercourse with her and performed oral sex on her. When Leland's nine-year-old son knocked on the door and asked them what they were doing, S.Y. pulled up her pants and ran out of the bathroom.

Centofante testified that S.Y. suggested going into the bathroom, so he followed her there. According to his testimony, S.Y. asked to see his penis, he complied, and then she pulled down her pants. They had sexual intercourse until Leland's son knocked on the door and asked them what they were doing, at which point they dressed and left the bathroom.

As a result of this incident, the State charged Centofante with Class A felony rape, Class A felony criminal deviate conduct, Class B felony sexual misconduct with a minor involving sexual intercourse, Class B felony sexual misconduct with a minor involving

3

deviate sexual conduct, Class D felony criminal confinement, and Class D felony child solicitation. As a result of a disruption in the house after the incident in the bathroom, the State charged Centofante with Class B felony criminal confinement (of Leland and/or Smith), Class C felony intimidation (of Leland and/or Smith), Class A misdemeanor battery (of Leland), and Class A misdemeanor battery (of Smith). The State also charged Centofante with being a habitual offender.

At trial, the State presented evidence as to Centofante's knowledge of S.Y.'s age. S.Y. testified that when they were all in the car, Leland saw Centofante "eyeballing" S.Y. and R.Y. and warned him, "Don't try to even mess with my two nieces. They're both underage, 14 and 15." *Id.* at 89, 90. R.Y. testified that Centofante asked them in the car how old they were, and Leland told him. Leland did not testify, but a detective responding to the scene testified that Leland said she had told Centofante in the car how old they were. Smith testified that he did not remember any conversation that night with Centofante about S.Y.'s age and that he had never told Centofante S.Y.'s age.

At the close of the State's evidence, the trial court granted Centofante's motions for judgment on the evidence as to Class B felony criminal confinement (of Leland and/or Smith), Class C felony intimidation (of Leland and/or Smith), and Class A misdemeanor battery (of Leland).

Centofante then testified in his own defense. He admitted he had sexual intercourse with S.Y. but testified he did not think she was a minor. He claimed that S.Y.'s age was never discussed, in the car or otherwise, and that she presented herself as

4

an adult by the way she dressed, through her sexual advances, and by smoking marijuana and snorting pills with them.

The trial court gave the jury an instruction on the presumption of innocence:

Under the law of this State, a person charged with a crime is presumed to be innocent. To overcome the presumption of innocence, the State must prove the defendant guilty of each element of the crime charged, beyond a reasonable doubt.
The defendant is not required to present any evidence to prove his innocence or to prove or explain anything.

Appellant's App. p. 74.

The trial court also gave two jury instructions tendered by Centofante on the affirmative defense that he reasonably believed S.Y. was at least sixteen years of age.

One instruction stated:

It is a defense that the defendant reasonably believed that [S.Y.] was sixteen years of age or older. If the defendant proved this by a preponderance of the evidence, you must find the defendant not guilty of sexual misconduct with a minor.

*Id.* at 111. The other instruction stated:

For the defense of mistaken belief to prevail, the defendant bears the burden of proving by a preponderance of the evidence that:
1. The defendant had the actual belief that [S.Y.] was sixteen years of age or older; and
2. The belief was reasonable under the circumstances.

*Id.* at 112. No instruction was offered or given defining the preponderance standard noted in Centofante's affirmative defense instructions.

The jury returned guilty verdicts for Class B felony sexual misconduct with a minor involving sexual intercourse, Class D felony child solicitation, and Class A misdemeanor battery (of Smith). It acquitted him of the other charges.

5

Centofante waived jury trial on the habitual offender allegation, and the court subsequently found him to be a habitual offender. The court merged the child solicitation count with the sexual misconduct with a minor count and imposed an aggregate twenty-year sentence: ten years for sexual misconduct with a minor, enhanced by ten years for the habitual offender finding, and a concurrent one year for battery. Centofante now appeals.

## DISCUSSION AND DECISION

Centofante contends that the trial court committed fundamental error by failing to instruct the jury on the definition of "preponderance of the evidence" and by inadequately instructing the jury on the presumption of innocence.

## I. PREPONDERANCE STANDARD

Indiana's sexual misconduct with a minor statute provides that a person who is at least twenty-one years of age commits Class B felony sexual misconduct with a minor if he or she performs or submits to sexual intercourse or deviate sexual conduct with a child at least fourteen but less than sixteen years of age. Ind. Code § 35-42-4-9(a)(1) (2007). The statute also provides a defense: "It is a defense that the accused person reasonably believed that the child was at least sixteen (16) years of age at the time of the conduct." Ind. Code § 35-42-4-9(c). This defense admits all the elements of the crime but provides circumstances excusing the defendant from culpability. *Moon v. State*, 823 N.E.2d 710, 715 (Ind. Ct. App. 2005), *trans. denied*. Because the defense addresses only the defendant's culpability and does not negate an element of the crime, the defendant has the burden of proving the defense by a preponderance of the evidence. *See id.* at 715-16.

6

Here, the trial court gave the jury Centofante's two tendered instructions on this affirmative defense. Each instruction informed the jury that Centofante had the burden of proving the defense by a preponderance of the evidence, but neither instruction nor any other instruction informed the jury of the meaning of "preponderance of the evidence."

Centofante now claims that the trial court should have given such an instruction. However, he neither objected to his own affirmative defense instructions on these grounds nor offered another instruction to correct the deficiency in his own instructions. He thus claims he may avoid procedural default because the error is fundamental. *See Baker v. State*, 948 N.E.2d 1169, 1178-79 (Ind. 2011) (addressing instructional error claim waived by defendant's failure to object to instruction or tender his own at trial where defendant asserted fundamental error). The fundamental error doctrine provides a vehicle for the review of error not properly preserved for appeal. *Id.* at 1178. This exception is extremely narrow and applies only when the error constitutes a blatant violation of basic principles, the harm or potential for harm is substantial, and the resulting error denies the defendant fundamental due process. *Delarosa v. State*, 938 N.E.2d 690, 694 (Ind. 2010). The error must be so prejudicial to the defendant's rights as to make a fair trial impossible. *Baker*, 948 N.E.2d at 1178. Harm is not shown by the fact that the defendant was ultimately convicted; rather, harm is determined by whether the defendant's right to a fair trial was detrimentally affected by the denial of procedural opportunities for the ascertainment of truth to which he would have been entitled. *Id.* at 1179.

Indiana's court rules require trial courts to instruct juries on the issues for trial and the applicable burdens of proof. *See* Ind. Crim. Rule 8(F); Ind. Jury Rules 20, 26. A term used in instructions should be defined by the court where it has a technical meaning or may be misapplied by the jury; however, where the term is in common use and can be understood by a person of ordinary intelligence, it need not be defined or explained in the absence of anything in the charge to obscure its meaning. *McNary v. State*, 428 N.E.2d 1248, 1252 (Ind. 1981).

Legal definitions of "preponderance of the evidence" refer to evidence that "convinces you most strongly of its truthfulness," is of "greater weight," or is "more probably true than not true," and specifically reject the notion that a party necessarily meets the standard merely by presenting a greater quantity of evidence than the other side. *See, e.g.*, *Gambill v. State*, 675 N.E.2d 668, 676 (Ind. 1996). Jurors not instructed on the meaning of "preponderance of the evidence" may incorrectly determine that the standard is higher than it is or is met merely because one side of an issue has a greater quantity of evidence. We therefore conclude that "preponderance of the evidence" is a legal term of art not commonly understood by a layperson. *See Ludy v. State*, 784 N.E.2d 459, 462 (Ind. 2003) (meaning of "uncorroborated" likely not self-evident to lay juror). Because the jury here was instructed that Centofante had the burden of proving his affirmative defense to sexual misconduct with a minor by a preponderance of the evidence, the court should have instructed it as to the meaning of that standard.

However, Centofante defined the standard for the jury during closing arguments. There, he stated that he had the burden of proving his affirmative defense by a

preponderance of the evidence and that the preponderance standard "just means more likely than not that Mr. Centofante had a reasonable belief that SY was at least 16." Tr. pp. 719-20. Moreover, a preliminary instruction regarding the jury's role in weighing the evidence informed the jury that the quantity of evidence was not necessarily determinative: "The quantity of evidence or the number of witnesses need not control your determination of the truth. You should give the greatest value to the evidence you find most convincing." Appellant's App. p. 94.

Centofante nonetheless points out that during deliberations, the jury submitted several questions to the trial court, one of which was, "On [the counts for sexual misconduct with a minor], is the jury being asked to determine the Defendant's knowledge of SY's age?" Tr. p. 772. This inquiry, however, does not indicate confusion over the preponderance standard but instead whether the jury was to evaluate his affirmative defense at all. The court appropriately responded, "The jury must reread the instructions and apply their collective knowledge to the instructions as a whole." *Id.* at 775.

We therefore conclude that the trial court did not commit fundamental error by failing to instruct the jury on the definition of the preponderance standard.

## II. PRESUMPTION OF INNOCENCE

Centofante also challenges the jury instruction on the presumption of innocence, which, as noted above, stated:

> Under the law of this State, a person charged with a crime is presumed to be innocent. To overcome the presumption of innocence, the

9

> State must prove the defendant guilty of each element of the crime charged, beyond a reasonable doubt.
>
> The defendant is not required to present any evidence to prove his innocence or to prove or explain anything.

Appellant's App. p. 74. Centofante argues that this instruction was incomplete because it did not inform the jury that the presumption of innocence continues until the close of trial and that the jury had a duty to reconcile the evidence upon a theory of his innocence if it could do so. Had he requested such an instruction, he would have been entitled to it. *See Robey v. State*, 454 N.E.2d 1221, 1222 (Ind. 1983). But because he failed to do so, he must show fundamental error.

Centofante cites two cases in which the defendants were granted new trials because of inadequate presumption of innocence instructions, but the defendants in those cases tendered more complete instructions that were rejected and thus did not need to show fundamental error on appeal. *See Farley v. State*, 127 Ind. 419, 26 N.E. 898, 899 (1891); *Lee v. State*, 964 N.E.2d 859, 865 (Ind. Ct. App. 2012), *trans. denied*.

In *Bledsoe v. State*, 274 Ind. 286, 410 N.E.2d 1310, 1316 (1980), the Indiana Supreme Court determined that the defendant could not claim a denial of the presumption of innocence or a fair trial merely because his tendered instruction was refused; instead, it looked to the totality of the circumstances. In doing so, it found "highly relevant" that the defendant was acquitted of two of the three charges against him. *Id.* It further stated:

> We fail to see how any of the above-recited allegations of error [including the refusal of the tendered presumption of innocence instruction] can be said to have prejudiced appellant as to the one count he was convicted of, when they obviously did not prejudice him with respect to the two counts he was acquitted of. Each of the incidents pertained to appellant generally and this case as a whole. Each of these alleged problems affected appellant,

10

if at all, in a general fashion, and would have had the same effect, if any, on the jury's consideration of all three charges.

*Id.* at 1317. The Court subsequently held that the defendant was not denied the presumption of innocence or a fair trial by the refusal of his tendered instruction. *Id.*

In examining the totality of the circumstances here, we likewise conclude that Centofante was not denied the presumption of innocence or a fair trial. The trial court gave an instruction on the presumption of innocence. The jury was further instructed that the State had the burden to prove each element of a crime beyond a reasonable doubt, that any reasonable doubt must be resolved in Centofante's favor, and that the jurors were to reserve judgment about the outcome of the case until the court submitted the case for deliberations. Appellant's App. pp. 93, 64. Further, the jury acquitted Centofante of several charges. The incomplete presumption of innocence instruction can hardly be considered to have denied him a fair trial when it clearly did not prejudice him with regard to the counts of Class A and Class B felony rape, Class A and Class B felony criminal deviate conduct, Class B felony sexual misconduct with a minor involving deviate sexual conduct, and Class D felony criminal confinement (of S.Y.) for which the jury found him not guilty. In light of the court's instructions together with Centofante's acquittal of several charges, we are confident that he was not denied the presumption of innocence or a fair trial. There is no fundamental error.

### III. CUMULATIVE FUNDAMENTAL ERROR

Finally, we reject Centofante's claim that the lack of a preponderance instruction and the incomplete presumption of innocence instruction cumulatively amount to

11

fundamental error. At trial, S.Y. and Centofante each gave their versions of the events, and S.Y. was subjected to rigorous cross-examination. Moreover, the jury was informed that the preponderance standard required Centofante to show that it was more likely than not that he reasonably believed S.Y. was at least sixteen years old, and that if he did so, it must find him not guilty of sexual misconduct with a minor. The jury was also generally instructed that the quantity of evidence was not necessarily determinative. Furthermore, although the presumption of innocence instruction could have been more complete, it is clear from the other instructions and the jury's verdicts that Centofante was not denied the presumption of innocence.

## CONCLUSION

Because Centofante was not denied fundamental due process or a fair trial, we affirm the trial court.

Affirmed.

MAY, J., and PYLE, J., concur.